1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>  v.<br><br>NEDZAD KAHRIMANOVIC,<br><br>       Defendant. | CASE NO. 2:24-mj-00573-BAT<br><br>**CERTIFICATION OF EXTRADITION** |

   The United States of America (hereafter "US"), on behalf of Bosnia and Herzogovina (hereafter "Bosnia") requests the extradition of Defendant, Nedzad Kahrimanovic, pursuant to the Treaty between the US and Bosnia for Mutual Extradition of Fugitives from Justice, US-Yugo, October 25, 1902, 32 Stat 1890 (hereafter the "Treaty"). *See* Dkt. 1. Bosnia issued an arrest warrant and submitted to the US a formal request for the extradition of Defendant to serve a five-year prison sentence that a Bosnian Court imposed following Defendant's trial and conviction for committing a war crime: the murder of a civilian. *See* Dkt. 1 (complaint). Defendant opposes the extradition request.

   On February 21, 2025, the Court conducted an extradition hearing pursuant to 18 U.S.C. § 3184. Based upon the hearing conducted, the Court's admission of the documentary evidence that the US filed on behalf of Bosnia, documentary evidence Defendant submitted, counsels' oral

CERTIFICATION OF EXTRADITION - 1

arguments, the written pleadings and memoranda filed, and the record herein, the Court makes the following findings and the following conclusions of law.

(1)    International extradition is a diplomatic process that is initiated when a foreign nation requests extradition of an individual. *Manta v. Chertoff*, 518 F.3d 1134, 1140 (9th Cir. 2008). As a foreign policy matter, extradition is entirely within the discretion of the executive branch, subject to 18 U.S.C. § 3181 *et seq. Vo v. Benov*, 447 F.3d 1235, 1237 (9th Cir. 2006). When a foreign fugitive is found in the United States, the foreign state may submit a formal request for extradition, through diplomatic channels, with certified documentation. The US initiates extradition proceedings and the Court conducts an extradition hearing. The purpose of the extradition hearing is to determine whether a person arrested pursuant to a complaint filed by the US on behalf of a requesting government is subject to surrender to the requesting country under the terms of the applicable treaty and the relevant law. *See* 18 U.S.C. § 3184.

If, after the hearing, the Court finds extradition is warranted, the Court certifies that decision and the evidence in support thereof to the Secretary of State. *Blaxland v. Commonwealth Dir. of Pub. Prosecutions*, 323 F.3d 1198, 1208 (9th Cir. 2003). However, the final decision of whether to extradite is reserved to the Secretary of State. *Id.*

An extradition hearing is not a trial on the merits but akin to a preliminary hearing in a criminal matter. *See In Re Extradition of Strunk*, 293 F.Supp.2d 1117, 1121 (E.D. Cal. 2003). The admissibility of evidence in an extradition proceeding is governed by "'the general extradition law of the United States and the provisions of the Extradition Treaty.'" *In re Extradition of Santos*, 795 F.Supp.2d 966, 970 (C.D. Cal. 2011), quoting *Emami v. U.S. District Court*, 834 F.2d 1444, 1450 (9th Cir. 1987). Here, the Treaty states extradition will be based "upon such evidence of criminality as, according to the laws of the place where the fugitive or

1   person so charged shall be found." *See* Dkt. 1 (complaint with attached copy of Treaty at 13).

2   Defendant was found in this federal district. Neither the Federal Rules of Criminal Procedure nor

3   the Federal Rules of Evidence apply in extradition hearings. Fed. R. Crim. P. 1(a)(5)(A); Fed. R.

4   Evid. 1101(d)(3) (but preserving the rules of privilege); *In re Santos*, 795 F.Supp.2d at 970,

5   citing *Then v. Melendez*, 92 F.3d 851, 855 (9th Cir. 1996). Hence, hearsay evidence and

6   unsigned or unsworn translations of witness statements are admissible to support probable cause

7   for the charges against the fugitive sought be a foreign nation, *Then v. Melendez*, 92 F.3d at 855;

8   *Manta v. Chertoff*, 518 F.3d at 1147 (9th Cir. 2008), and the Court's determination need not even

9   be based upon evidence that would be admissible at a preliminary hearing or in a grand jury

10  proceeding in the United States. *Zanazanian v. United States*, 729 F.2d 624, 626 (9th Cir. 1984),

11  citing *Collins v. Loisel*, 259 U.S. 309, 317 (1922).

12       Under 18 U.S.C. § 3190, the Court shall admit depositions, warrants, or other papers or

13  copies offered as evidence at an extradition hearing that are properly and legally authenticate.

14  The certificate of the principal diplomatic or consular officer of the United States resident in

15  foreign county shall be proof that the same, so offered, are authenticated in the manner required."

16  During the extradition hearing held on April 21, 2025, the Court provisionally admitted and

17  authenticated the photocopied documents that were part of the certificate of the consular officer

18  of the United States resident in Bosnia, subject to the US providing to Defense counsel the

19  original certificate for review and examination. The US subsequently made available for review

20  by Defendant's lawyers the original certificate and filed an unopposed motion for leave to file as

21  Exhibits 2C and 2D the original extradition packet and documentation that was certified by the

22  US consular officer in Bosnia. The Court granted the unopposed motion and admitted Exhibits

23  2C and 2D, which the Court finds to be properly authenticated. Dkt. 62.

(3)     To establish Defendant's extradition is warranted, the US must show: (1) a valid extradition treaty between the US and Bosnia is in full force and effect; 2) the Court has personal and subject matter jurisdiction; (3)  Defendant is the individual sought by Bosnia; (4) Defendant can be extradited on the offenses with which he is charged under the Treaty's terms; (5) there is probable cause to believe Defendant committed the offenses for which extradition is sought; and (6) that the US has submitted the required evidence on behalf of Bosnia to support probable cause for extradition and the evidence has been properly authenticated. *See Barapind v. Reno*, 225 F.3d 1100, 1105 (9th Cir. 2000).

(4)     While Defendant has not challenged the authenticity of the evidence the US has submitted, he does challenge the weight of the evidence and whether it supports extradition. Defendant specifically argued during the extradition hearing the Court should not accept the Declaration of Tom Heinemann, the Department of Justice Attorney Advisor, as dispositively establishing the extradition treaty herein is in full force and effect. Defendant contends the force and effectiveness of an extradition treaty is a determination of law, reserved to the Court. The Court has reviewed the US's submissions and documents in support of extradition, and find they are properly authentication and admits them. The Court also admits the submissions and documents that Defendant submitted in opposition to extradition and find they may be properly considered in certification of extradition.

(5)     The Court finds Defendant who has appeared before this Court on several occasions is the same person named in the complaint filed herein and who is sought for extradition by Bosnia and who was charged in Bosnia in an order of arrest issued by the Cantonal Court in Tuzla, Bosnia and Herzegovina on February 26, 2019. Dkt. 1, Exhibit 1, at ECF p. 22. During his detention hearing, Defendant admitted he is the person sought in the

1    extradition requests and argued he traveled back-and-forth between the US and Bosnia for the

2    criminal trial and underlying sentence and conviction herein, and how Bosnia has long known he

3    has lived in this federal district. Additionally, Defendant filed memoranda and declarations in

4    support of release acknowledging he is Nedzad Kahrimanovic, he lived with his wife and

5    children in Bosnia until 1997, and he attended his criminal trial in this matter in Bosnia. Dkt. 21.

6    The Court finds Defendant is the person sought by Bosnia in this extradition matter, and

7    Defendant has not argued otherwise.

8        (6)    As Defendant resides in this District, the Court finds it has personal jurisdiction

9    over this matter. The Court also has subject matter jurisdiction in this matter pursuant to 18

10   U.S.C. § 3184, and Local Magistrate Judge Rule (MJR) 1(c).

11       (7)    The parties disagree whether there is a valid extradition treaty between the US

12   and Bosnia in full force and effect. Defendant argues the 1902 Treaty between the Kingdom of

13   Servia and the US no longer exists, the Court should not find the 1902 Treaty is in full force and

14   effect based upon a successor state analysis, that finding the 1902 Treaty is in full force and

15   effect between Bosnia and the US would violate Article II of the United States Constitution

16   which states The President "shall have Power, by and with the Advice and Consent of the Senate,

17   to make Treaties, provided two thirds of the Senators present concur," that probable cause to

18   extradite is lacking; and that there are humanitarian and health reasons to deny extradition.

19       (8)    As discussed below, the Court has considered the record and the arguments of the

20   US and Defendant and finds the 1902 extradition treaty originally signed by the Kingdom of

21   Servia and the US remains in full force and effect as to the extradition requests between the US

22   and Bosnia, and to Defendant who was arrested in this District was convicted of committing a

23

war crime (murder of a civilian) which is an extraditable offense within the terms of Article II of the Treaty.

Article II of the Treaty states: "Extradition shall be granted for the following crimes and offenses: 1. Murder, comprehending assassination, patricide, infanticide and poisoning; attempt to commit murder; manslaughter, when voluntary." *See* Dkt. 1, Exhibit 1 at ECF p. 13. The Treaty further states "Extradition is also to take place for participation in any of the crimes and offense mentioned in this Treaty, provided such participation may be punished in the United States as felony, and in Servia as crime or offense as specified." *Id*. at 14. Defendant was convicted of the war crime of killing an unarmed civilian. The US also recognizes war crimes as a felony offense. *See* 18 U.S.C. § 2441. The crime under US law applies to offenders who, among other things, kill a civilian victim, regardless of the victim's nationality in relation to an armed conflict.

Defendant argues the Treaty does not specifically list the commission of a war crime as an offense for which extradition may be ordered. The US submitted exhibits showing Defendant was charged and convicted of killing a civilian in violation of the rules of international law effective at the time of war. *See* Dkt. 1 at 23. The substantive crime that Defendant committed is murder which is a crime for which he can be extradited under the Treaty. The Court thus concludes the crime for which Defendant committed, murder during the time of war, is an extraditable offense under the Treaty. *See e.g. In re Extradition of Handanovic*, 829 F.Supp.2d 979, 990 (D. Oregon 2011) ("Here, Handanović is accused of War Crimes against Civilians and War Crimes against Prisoners of War. The most closely analogous offenses in the United States for the acts allegedly committed by Handanović are first degree murder.").

1    (9)    Defendant argues there are several reasons the Court should find there is no

2    extradition treaty that is currently in full force and effect between the US and Bosnia.

3    Defendant argues the "Treaty," i.e., Treaty signed by the Kingdom of Servia and the

4    United States and ratified in 1902 no longer exists and/or was replaced by a new treaty between

5    the United States and Serbia in 2016, Dkt. 41 at 22. Second, Defendant argues the United States

6    Senate ratified the 1902 Treaty between the US and Servia but did not subsequently ratify the

7    1902 Treaty between the US and Bosnia. *See* Dkt. 51. And third, Defendant argues finding the

8    1902 Treaty is in full force and effect would violate Article II of the United States Constitution.

9    (10)    The Court declines to adopt Defendant's arguments. Courts have considered and

10    rejected the argument there is no extradition treaty that the senate ratified between the US and

11    Bosnia, because Bosnia shares no legal, geographic, or historic unity with the Kingdom of Servia

12    which no longer exists as a political entity, and because the geographic area now known as

13    Bosnia was in 1902 part of the Austro-Hungarian Empire, not part of the Kingdom of Servia.

14    This argument was specifically rejected in *In re Extradition of Handanovic*, 829

15    F.Supp.2d 979, 984-85 (D. Oregon 2011) in which the court considered Defendant's arguments

16    and concluded "other courts faced with a similar challenge to the 1902 Treaty have concluded

17    that it is a valid treaty between the United States and B & H [Bosnia and Herzogovina]." (list of

18    cited cases omitted). Numerous other courts have come to the same conclusion. *See United*

19    *States v. Bilic*, 625 F.Supp.3d, 1214, 1226 (D. Utah 2022) (Court finds considering the large

20    volume of case law regarding this same issue, and consistent with its sister courts over the last

21    century, that the 1902 Treaty is a valid treaty in force and effect between the United States and

22    Bosnia-Herzegovina); *In re Extradition of Nezirovic*, 2013 WL 520420 at * 3 (W.D. Virginia

23    Sept. 16, 2013) (Multiple courts examining the history of the 1902 Extradition Treaty between

the US and Servia have found that it is in full force and effect); *Basic v, Steck*, 2015 WL 416901 at * 5 (E.D. Kentucky July 9, 2015) ("Because every successive state between the Kingdom of Serbia and the Republic of Bosnia and Herzegovina accepted the Treaty, the Treaty remains in full force and effect. This finding is in line with every court that has confronted this issue.").

In *United States v. Bilic*, the Court specifically rejected the argument Defendant makes here that the Senate did not ratify the 1902 extradition as applicable to present day Bosnia, and thus there is no extradition treaty. The *Bilic* Court rejected the argument on the grounds that numerous courts have "consistently recognized state succession with regard to extradition treaties and will presume state succession unless the successor state explicitly rejects a given treaty." *United States v. Bilic,* 625 F.Supp.3d at 125-1226. Here, Bosnia has not explicitly rejected the Treaty and instead specifically requests Defendant be extradited under the Treaty, and that the Treaty is in force. *See* e.g., Dkt. 1 at 20 (Request to Extradite Defendant from US to Bosnia); *see also* Dkt. 56.

Thus, no Court has held or found the 1902 Extradition Treaty, herein, does not exist and cannot be utilized as a basis for an extradition request between Bosnia and the US. Defendant essentially argues every court including the *Bilic* Court is wrong that there is a valid extradition treaty between the US and Bosnia. The Court declines to adopt Defendant's position and adopts the position taken by all other courts that the 1902 extradition treaty is a valid treaty in full force between the US and Bosnia.

(11) Defendant also argues the 2016 treaty between Serbia and the US replaced the 1902 Treaty between the Kingdom of Servia and the US. Defendant is correct the extradition treaty negotiated between the US and Serbia in 2016, revised the 1902 treaty. However, the 2016 revision of the 1902 treaty was not negotiated by Bosnia, does not involve Bosnia, and instead

1    involves Serbia, which in 2016 was, and remains, a separate and different country. The Court

2    finds the separate extradition treaty between Serbia and the US does not necessarily determine

3    whether the 1902 extradition treaty between the US and Bosnia continues to be in full force and

4    effect. That is, Serbia has no authority to determine the viability of any extradition treaty

5    between Bosnia and the US, including the 1902 Extradition Treaty. The Court finds the separate

6    2016 treaty between Serbia and the US is exactly what it says it is: a treaty between the US and

7    Serbia, which is a county that is not seeking the extradition of Defendant. The Court thus rejects

8    any suggestion the promulgation of the 2016 treaty between Serbia and the US necessarily

9    results in the termination of the 1902 extradition treaty which the executive branches of both

10   Bosnia and the US recognize as an extradition treaty that remains in full force and effect.

11        (12)    Although all Courts that have addressed whether the 1902 extradition treaty upon

12   which the US relies remains in full force and effect, Defendant contends an issue that has not

13   been addressed with any depth in this circuit precludes certification of extradition: whether

14   application of the successor state analysis violates Article II of the United States Constitution

15   which requires ratification of any extradition treaty.

16        (13)    Defendant argues the US and Bosnia rely upon an extradition treaty which has

17   been necessarily amended because the 1902 Treaty was entered into between the Kingdom of

18   Servia which is a country that no longer exists. Thus, to the extent, the US and Bosnia wish to

19   apply the 1902 Treaty to the extradition of Defendant, Defendant argues they necessarily must

20   amend the terms of the 1902 treaty by replacing Bosnia for original signatory the Kingdom of

21   Servia. Defendant reasons any amendment to the 1902 treaty must be ratified by the United

22   States Senate, and as the Senate has not ratified the substitution of Bosnia for the Kingdom of

23

CERTIFICATION OF EXTRADITION - 9

1   Servia in the 1902 treaty, that treaty cannot be deemed to be in full force and effect and be the

2   basis to extradite Defendant to Bosnia.

3     The US does not argue the Senate has ratified the 1902 extradition treaty as applicable to

4   the US and Bosnia. The US argues ratification is unnecessary because Bosnia is a successor state

5   for purposes of the extradition treaty, and both the US and Bosnia, though executive action have

6   communicated and affirmed the 1902 Treaty is in full force and effect and applicable to the

7   extradition of Defendant. *See* Dkt. 55 and attachments.

8     It has long been recognized the advice and consent of the Senate is a constitutional

9   prerequisite to a valid treaty, and the executive branch does not have the power to extradite

10  alleged criminals absent a valid extradition treaty. *Then v. Melendex*, 92 F.3d 851, 853 (9th Cir.

11  1996) (citing *Valentine v. United States ex rel. Neidecker*, 299 U.S. 5, 8–9 (1936).

12    The Court of Appeals in *Then* addressed the claim the district court lacked jurisdiction

13  over Singapore's extradition request because the United States has never ratified an extradition

14  treaty with Singapore as required by Article II of the United States Constitution. *Id.* The Court of

15  Appeals noted in 1931 the United States and the United Kingdom signed an extradition treaty

16  which was ratified by the Senate in 1932. As the treaty extended to the United Kingdom's

17  "dominions overseas" Singapore, which was then a British colony, fell under the 1932 treaty.

18    In 1963, Singapore because a part of the Federation of Malaysia which was created that

19  year. Malaysia assumed the United Kingdom's treaty obligations on behalf of Singapore. In

20  1965, Singapore became a sovereign state and its independence agreement provided that

21  previous treaties between Malaysia and other countries would be deemed a treaty between

22  Singapore and that county. In 1969, Singapore and the United States exchanged diplomatic

23  letters in which the executive branches of each country confirmed the validity and applicability

CERTIFICATION OF EXTRADITION - 10

of the 1931 extradition treaty that had been originally entered into between the United Kingdom and the United States. *Id.*

Then argued that notwithstanding the exchange of executive letters confirming the viability and applicability of the 1931 extradition treaty to Singapore's extradition request, that treaty or agreement "would have to be presented anew to the Senate and receive its consent." *Id.* at 853-854

The Court of Appeals rejected *Then*'s argument finding "the continuing validity of the Treaty after Singapore's independence from the United Kingdom presents a political question, and we must defer to the intentions of the State Departments of the two countries." (citations omitted). *Id.* at 854. The Court also rejected *Then*'s argument the changes between the political and judicial systems of the United Kingdom and the newly formed Republic of Singapore necessitated Senate ratification of any extradition treaty, and that an exchange of diplomatic letters between the executive branches of the United States and Singapore fails to meet the Article II treaty ratification requirement. *Id.* The Court found political and judicial changes accompanying the emergence of a new country may be a factor in the State Department's decision making regarding continued treaty relations with the new county but "federal courts are not as well equipped as the Executive to determine when the emergence of a new country brings changes that terminate old treaty obligations." *Id.*

The Court of Appeals concluded:

> The Senate's ratification of the 1931 Treaty, the emergence of independent Singapore as a successor to British Singapore, followed by the respective State Departments' actions evincing an intent to continue the Treaty between the two nations, establish the existence of a constitutionally valid extradition treaty between Singapore and the United States.

*Id.*

1    As noted above, the *Then* decision stated that "the continuing validity of the Treaty after

2    Singapore's independence from the United Kingdom presents a political question, and we must

3    defer to the intentions of the State Departments of the two countries." The political question

4    doctrine "excludes from judicial review those controversies which revolve around policy choices

5    and value determinations constitutionally committed for resolution to the halls of Congress or the

6    confines of the Executive Branch." *Defense for Children International-Palestine v. Biden*, 107

7    F.4th 926, 930 (9th Cir. 2024) (citations omitted).

8    Given the definition of the political question doctrine, Defendant's argument raises the

9    question of whether the *Then* decision correctly found the validity of the 1931 treaty is in fact a

10   political question. *Then* did not challenge the fact the executive branches of the United States and

11   Singapore engaged in actions that evinced an intent to continue the 1931 between Singapore and

12   the United States. Rather, *Then* argued, notwithstanding any executive action or agreements, any

13   extradition treaty between the United States and Singapore, a country created in 1965, requires

14   Senate ratification. *Then*'s argument flows from how the original 1931 extradition treaty was

15   signed and then ratified between the United States and the United Kingdom. The 1931 treaty was

16   altered or amended and required senate ratification because Singapore did not exist as a nation in

17   1931 and was not a party to the treaty. The fact the 1931 treaty was later altered and/or amended

18   by executive action of the United States and Singapore is obvious and evident; otherwise the

19   parties in *Then* would have agreed the 1931 treaty was the same treaty being utilized by

20   Singapore and the United States, and the Court of Appeals would not have had to address

21   whether the 1931 treaty violated Article II of the United States Constitution.

22   This Court notes all original extradition treaties between the United States and another

23   country appear to follow a two-step process. First, after the executive branches confer and agree

upon the language and terms of the treaty, executive branch representatives of each country sign the treaty. And second, after the extradition treaty is signed, it is submitted to the United States Senate for ratification and to the President for signature. In this case, the Treaty was signed on October 25, 1901 in Belgrade and was ratified by the United States Senate and the President on January 27, 1902 and March 17 1902 respectively. The Treaty was ratified by Servia on March 17, 1902 and the ratifications were exchanged on May 13, 1902. Dkt. 1 at 12.

Article II grants the President "by and with the Advice and Consent of the Senate" to "make Treaties provided two thirds of the Senators present concur." Art II, § 2, cl. 2. The US avers in 1992, the President of Bosnia committed to the US Secretary of State that Bosnia is ready to fulfill the 1902 treaty obligations. *See* Dkt. 56 at 2. However, the US has not submitted any evidence that the President of the United States signed an extradition treaty with Bosnia which had been ratified by the United States Senate.

Thus, even accepting the *Then* court's finding that the State Department is in a better position to make policy decisions, that finding does not alter the requirement under Article II of the United States Constitution an extradition treaty or agreement entered into between the executive branches of the United States and another country must be approved and ratified by the Senate in order for the treaty to be effective. The 1931 extradition treaty in *Then* was not entered into between the United States and Singapore. The continuing application and validity of the 1931 treaty relies upon an executive agreement that altered or amended the treaty by replacing the United Kingdom with the nation of Singapore effective between Singapore and the United States. As a new or amended extradition treaty, this treaty would seem to require Senate ratification as required by Article II before the President could make it a valid treaty.

1    As a determination of whether a treaty was entered into in compliance with or in

2    violation of Article II is a federal constitutional question, not a political question, Defendant's

3    argument raises the question of whether the holding in the *Then* decision is incorrect and requires

4    revision.

5    This Court, of course, has no authority to disregard or overrule the Court of Appeals'

6    decision in *Then v. Melendex, See U.S. v. State of Wash.*, 872 F.2d 874, 880 (9th Cir. 1989) ("We

7    are bound by decisions of prior panels" unless an en banc decision, Supreme Court decision, or

8    subsequent legislation undermines those decisions.") (citation omitted). Hence, notwithstanding

9    the concerns above, the rule of law requires this Court to abide by the *Then* decision, and to

10   reject Defendant's argument the 1902 treaty lacks force or effect because the treaty as applied to

11   Bosnia and the US was never ratified by the Senate. In both Defendant's case and the *Then* case,

12   the US relies upon an extradition agreement to extend an earlier ratified extradition treaty that

13   was entered into between the United States and a country that is not the original signatory and

14   not requesting extradition. In both cases, the country requesting extradition did not exist as a

15   separate nation at the time the original extradition treaty was signed. The US has not argued the

16   Senate has ratified an extradition Treaty between the US and Bosnia. Thus, as in the *Then* case,

17   the viability of the extradition treaty in Defendant's case is wholly contingent upon executive

18   action undertaken by the US and Bosnia. Here, the record establishes the executive branches of

19   both the US and Bosnia have embraced the 1902 extradition treaty as remaining in fully force

20   and effect. Pursuant to the *Then* decision, the Court accordingly declines to deny certification of

21   extradition based upon Defendant's argument the 1902 Treaty is of no effect for lack of senate

22   ratification and apply this treaty would violate Article II of the United States Constitution.

23

1    For the foregoing reasons the Court finds that the 1902 Treaty entered remains in full

2    force and effect and is applicable to the extradition of Defendant.

3    (14)    Defendant also contends Defendant may not be extradited for the crime for which

4    he was convicted because the crime was not committed "within the jurisdiction" of one of the

5    contracting extradition parties. Dkt. 41 at 35. Defendant reasons the crime was committed in

6    Bosnia which in 1902 was not part of Servia, and thus the 1902 Treaty is inapplicable. This

7    argument repeats Defendant's argument there is no Treaty between Bosnia and the US because

8    Bosnia shares no legal, geographic, or historic unity with the Kingdom of "Servia." The Court

9    has already rejected this argument and thus rejects Defendant's argument.

10    (15)    Defendant further argues the Treaty's political offense exception prohibits his

11    extradition. Dkt. 41 at 36. Defendant argues Article VI of the Treaty prohibits extradition "of a

12    political character," or to punish a person "for an offense of a political character," or for the

13    commission of a "political crime or offense." *Id.* Defendant argues there "is insufficient

14    evidence" he committed "a war crime, if a crime at all since Defendant acted in self-defense.

15    Defendant bears the burden of proof to show he is protected by the political offense exception,

16    an exception which is rarely applied. *See United States v. Bilic*, 625 F.Supp.3d at 1128. He fails

17    to show he committed a political crime. For crimes committed during war, i.e., "war crimes," the

18    status of the victim as a civilian is a key and deciding factor in determining whether a

19    Defendant's crime is political in nature. *Id.* citing *Nezirovic v. Holt,* 990 F.Supp.2d 606 (W.D.

20    Virginia 2014). Here, the documents the parties submitted establish the victim was a civilian

21    female with no military affiliation who was killed while Defendant acted as a soldier.

22    The Court finds the killing of the female civilian was neither a pure political offense that

23    was directed against the state such as treason or espionage, nor a crime committed for political

reasons. *See Quinn v. Robinson*, 783 F.2d 776 (9th Cir. 1986). Indeed, Defendant's defense at his trial, which the Bosnian Court rejected, was he killed the civilian in self-defense, and for no other reason. The Court accordingly finds the political crime exception is inapplicable.

(7)    The Court further finds there is probable cause to find Defendant is subject to the extradition under the Treaty. "In assessing probable cause, [courts] ask whether, under the totality of the circumstances, a reasonable and prudent person would think that there is a 'fair probability' that the accused person committed the crime for which extradition is sought." *Gomez v. United States*, No. 23-35139, 2024 WL 2874372, at *1 (9th Cir. June 7, 2024) (first quoting *United States v. Collins,* 427 F.3d 688, 691 (9th Cir. 2005) (other citations omitted). The record establishes Defendant appeared before a Court in Bosnia, and the Court in Bosnia tried, convicted, and sentenced Defendant to a term of five years of imprisonment for the crime of committing a war crime against a civilian (killing a civilian) under Article 142, Paragraph 1 of the Criminal Code of the Former Socialist Federal Republic of Yugoslavia. Dkt. 1, Exhibit 1, at ECF page 20, 23.

The Court notes that while Defendant does not contest the fact he was tried, convicted, and sentenced by a Court in Bosnia for this war crime, he argues there is insufficient evidence to support his war crime conviction on the grounds that had he been represented by an effective lawyer, he would have been either not been convicted or would have been convicted of a lesser homicide offense. He thus contends there is insufficient evidence to establish probable cause he committed the war crime for which he was convicted. Dkt. 41 at 39.

As noted above, an extradition hearing is not a jury or bench trial on the merits. Probable cause is established where the evidence presented "would support a reasonable belief [the extraditee] was guilty of the crime charged[.]" *Ahmad v. Wigen*, 910 F.2d 1063, 1066 (2d Cir.

1990) (citing *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925)). An extradition hearing does not decide guilt or innocence but is analogous to a preliminary hearing to determine the existence of probable cause for a criminal charge. *Mirchandani v. United States*, 836 F.2d 1223, 1226 (9th Cir.1988).

An extradition hearing is also not a hearing in which a Defendant may collaterally attack his or her foreign conviction. As the First Circuit Court of Appeals noted "it is well settled that 'surrender of an American citizen required by treaty for purposes of a foreign criminal proceeding is unimpaired by an absence in the foreign judicial system of safeguards in all respects equivalent to those constitutionally enjoined upon American Trials." *Hilton v. Kerry*, 754 F.3d 79, 89 (1st Cir. 2014). A reviewing Court will thus uphold a finding there is probable cause to believe the accused committed the crime charged if there is any competent evidence in the record to support it. *See e.g. Then v. Melendez*, 92 F.3d at 854.

Article II of the Treaty, herein, states "If the person whose extradition is requested shall have been convicted of a crime or offense, a duly authenticated copy of the sentence of the Court … shall be produced." Dkt. 1 at ECF p. 14. The United States attached to its complaint for extradition a copy of (1) the declaration of the president of the Municipal Court in Tuzla averring judgment was entered against Defendant for committing a war crime against a civilian, *id*. at 22, and the Criminal Judgment finding Defendant committed a war crime against a civilian, the murder of a civilian woman, and imposing a sentence of five years of imprisonment. *Id.* 40-41.

Defendant contends the declaration and judgment are insufficient to establish he was convicted of a war crime. The Court disagrees. There is no dispute Defendant was convicted of a war crime after a trial that he attended. He does not claim he was not so convicted, and the criminal declarations and judgment plainly establish probable cause to find Defendant was in

1    fact tried and convicted of a war crime, the killing of a civilian. That probable cause exists is

2    buttressed by the summary transcripts Defendant submitted showing he was tried and convicted

3    of committing a war crime. Thus, the Court finds there can be no dispute Defendant was in fact

4    convicted of a war crime, the murder of a civilian woman. Defendant further contends the

5    declaration of the president of the Municipal Court and the attached Judgment entered against

6    Defendant do not establish probable cause because based upon the declarations of legal

7    consultants that Defendant retained, Jesenka Residovic and Sabina Hota Catovic, Defendant

8    argues he would not have been convicted of committing a war crime had his trial lawyer been

9    effective. Dkt. 41 at 46.

10        These consultants opine Defendant was charged with a defective indictment that failed to

11   allege a nexus between the murder and an armed conflict; that there was insufficient evidence

12   between the murder and an armed conflict; errors were committed during Defendant's trial, and

13   that Defendant's lawyer was ineffective in failing to raise the arguments raised by Defendant's

14   current legal consultants. Defendant further argues that had he had competent counsel, he would

15   have been convicted of a lesser murder crime which is not extraditable because the statute of

16   limitations for the lesser murder has lapsed. *Id.* at 55.

17        Defendants submits that while there may be "some evidence" to support probable case

18   for purposes of extradition, the record of proceedings and the opinions of his legal consultants

19   negates the soundness of the Bosnian criminal judgment, or that Defendant committed a war

20   crime. *Id.* at 55.

21        Defendant's arguments fail. First, Defendant misapprehends the scope of treaty

22   extradition proceedings brought under 18 U.S.C. § 3184. In a treaty extradition proceeding, this

23   Court's inquiry is narrowly limited to (1) whether this court has jurisdiction over Defendant; (2)

1    whether the Treaty herein is in force and Defendant's conviction falls within the Treaty's terms";

2    and (3) whether "there is any competent evidence supporting the probable cause determination

3    that Defendant is subject to the extradition treaty. *See Vo v. Benov*, 447 F.3d 1235, 1240 (9th Cir.

4    2006). But the Court does not investigate the quality of the legal representation Defendant

5    received in Bosnia at his trial, attempt to retry the case, assess whether there are collateral

6    grounds to challenge the conviction, or inquire into the procedures or treatment awaiting

7    Defendant following certification of extradition. *See e.g., Arnbjornsdottir-Mendler v. U.S.*, 721

8    F.3d 679, 683 (9th Cir. 1993). No court has ever denied extradition based upon the treatment a

9    Defendant fugitive may face following certification. *Cornejo-Barreto v. Siefert*, 218 F.3d 1004,

10    1010 (9th Cir. 2000).

11    　　　Second, Defendant's argument he would not have been convicted of committing a war

12    crime had he received effective legal representation, does not alter the fact that he was in fact

13    convicted of killing a civilian which is a war crime. The Court finds Defendant's belief a

14    different outcome might have been achieved is not a basis to disregard his conviction for

15    committing a war crime of to find probable cause to extradite does not exist. As noted above, an

16    extradition hearing is not a hearing that addresses whether there is any basis to collaterally attack

17    a foreign conviction. Further the records the parties submitted establish Defendant, as a soldier

18    was driving a truck to his military command when he stopped, got out of the truck, and shot to

19    death an unarmed civilian female who was not a member of any army or military unit, and not

20    involved in any combat activities. The war crime was committed by Defendant while he was a

21    soldier and during a time and place involving armed conflict. Dkt. 41, Exhibits at ECF, p. 315

22    (Defendant's lawyer acknowledging the victim "was not a member of any military formation.").

23    Defendant shot and killed the female civilian in an area in which combat operations were

1   ongoing, and his defense counsel stated, "the incident occurred during the time of the armed

2   conflict." *Id.*  Defendant never denied that he had shot and killed the civilian female and his

3   claim he acted in self-defense was rejected by the Court in Bosnia.

4        In any event, "a magistrate does not weigh conflicting evidence and make factual

5   determinations but, rather determines only whether there is competent evidence to support the

6   belief that the accused has committed the charge offense." *Quinn v. Robinson*, 783 F.2d 776, 815

7   (9th Cir. 1986). Further, Defendant was convicted after a trial in Bosnia and a conviction is

8   ordinarily conclusive proof of probably cause in an extradition matter. *See Matter v. Extradition*

9   *of Marginian*, 2025 WL 289363 at * 3 (D. Oregon, Jan. 24, 2025) (citations omitted).

10        The Court accordingly finds there is sufficient evidence to find probable cause that

11   Defendant committed the offense for which extradition is sought.

12        Third, Defendant's argument extradition is barred because the statute of limitations has

13   lapsed or should have lapsed assumes he would have been convicted of some lesser degree of

14   homicide had he received effective assistance of counsel in Bosnia. Dkt. 41 at 38. The Court

15   declines to deny extradition on this basis as it would require the Court to retry Defendant's case

16   or review it as if it were a collateral attack on the conviction in order to determine whether a

17   different outcome would have been achieved had Defendant had a different lawyer in Bosnia.

18        Lastly, Defendant argues the Court should deny extradition due to the hardship he would

19   suffer due to poor health and based upon due process concerns. Dkt. 41 at 56. Defendant

20   contends, among other things, that his poor health, the hardships he might face, the conditions of

21   confinement in Bosnia, and the length of time the matter has been pending raise due process

22   concerns that bar extradition. However, the Court finds even if Defendants' concerns are

23   compelling, they are not grounds upon which the Court may rely to deny certification. The issues

1    Defendant raises about his health and what he faces in Bosnia must be presented to the Secretary

2    of State, not this Court because the Court does not have the authority to consider Defendant's

3    due process concerns. *See e.g.*, *Trinidad y Garcia v. Thomas*, 683 F.3d 952, 957 (9th Cir. 2012)

4    cert. denied 568 U.S. 1114 (2013) (Claim extradition would violate due process and convention

5    against torture is for the Secretary of State to decide; *see also Prasoprat v. Benov*, 421 F.3d

6    1009, 1016 (9th Cir. 2005) ("We have long adhered to the rule of non-inquiry—that it is the role

7    of the Secretary of State, not the courts, to determine whether extradition should be denied on

8    humanitarian grounds or on account of the treatment that the fugitive is likely to receive upon his

9    return to the requesting state.").

10    The Court further notes Defendant argues under 18 U.S.C. § 3186 the Secretary of State

11    may only deliver a person found subject to extradition to a foreign government only to be tried

12    for the offense of which is charged, and thus the Secretary of State may not deliver a person

13    found subject to extradition who has already been convicted and sentenced.

14    The argument does not alter the fact that pursuant to § 3184, the Court upon certifying

15    extradition is obligated to surrender Defendant to the Secretary of State. Under § 3184 the US

16    may file a complaint "charging" a person found in this district "with having committed within

17    the jurisdiction of any such foreign government any of the crimes provided by such treaty." If the

18    Court finds there is evidence to sustain the charge in the complaint, the Court is required to

19    certify extradition of the Defendant. Thus, the language of § 3184 directs extradition of persons

20    who have committed crimes under the jurisdiction of a foreign government, not merely persons

21    who face unadjudicated criminal charges as Defendant suggests.

22    Additionally, Defendant's contention the language of § 3186 permits extradition of only

23    persons "to be tried" is inconsistent with how it has been observed that "extradition is the formal

1    process by which a person is surrender by one country to another to face prosecution, or to serve

2    a sentence after their conviction, for criminal charges." *Kapoor v. DeMarco*, 132 F.4th 595, 599

3    (6th Cir. 2025). Moreover, that a person should be surrendered to the Secretary of State for

4    extradition to serve a foreign sentence following conviction is consistent with § 3184 and how

5    numerous courts have found a foreign criminal conviction constitutes sufficient evidence of

6    criminality to satisfy the probable cause requirements of 18 U.S.C. § 3184." *See Matter v.*

7    *Extradition of Marginian*, 2025 WL 289363 at * 3 (D. Oregon, Jan. 24, 2025) (A conviction is

8    ordinarily conclusive proof of probably cause in an extradition matter); *United States v. Perilla*

9    *Umbariila*, 562 F.Supp.3d 729, 741 (C.D. Cal 2022) (A foreign conviction of a person sought in

10   an extradition is dispositive of the issue of probable cause); (citations omitted); *Sidali v. I.N.S.*,

11   107 F.3d 191, 196 (3rd Cir. 1997) ("[A] foreign conviction obtained after a trial at which the

12   accused is present is sufficient to support a finding of probable cause for the purposes of

13   extradition."); *Spatola v. United States*, 925 F.2d 615, 618 (2d Cir. 1991) (agreeing "where there

14   has been a judgment of conviction there is no need for an 'independent' determination of

15   probable cause because the conviction establishes probable cause); In re *Extradition of Hughes*,

16   No. 12-1831-JGB (MLG), 2013 WL 1124294, at *6 (C.D. Cal. Mar. 18, 2013) ("Where, as here,

17   the fugitive has already been convicted, the conviction is dispositive of the issue of probable

18   cause."). The Court accordingly concludes the language set forth in § 3186 does not bar the

19   Secretary of State from receiving and delivering Defendant to the requesting foreign nation.

20                              **FINDINGS AND CERTIFICATION**

21        Based upon the pleadings and submissions of the parties, the evidence presented in these

22   proceedings which the Cour has admitted and which the Court finds are properly authenticated,

23   the submissions and argument of the parties, and the record in this case, the Court finds:

1.     The Court has subject matter jurisdiction to conduct these extradition proceedings under 18 U.S.C. § 3184 and Local Magistrate Judge Rule 1(c).

2.     This Court has personal jurisdiction over Defendant who was found in and arrested in this judicial district.

3.     There is a valid extradition treaty in full effect between the US and Bosnia.

4.     Defendant, Nedzad Kahrimanovic, is the person named in the complaint the US filed and who was found guilty under of the penal code of Article 142, Paragraph 1 of the Criminal Code of the Socialist Republic of Yugoslavia. Defendant is thus the person wanted by Bosnia via the Treaty and is subject to extradition under Article 2 of the Treaty.

5.     Defendant was convicted and sentenced in Bosnia to five years imprisonment for committing a war crime, the murder of an unarmed civilian who was not connected to any military unit. The war crime that Defendant committed is similarly prohibited under US federal criminal law. There is probable cause to believe Defendant committed the offense upon which extradition is sought and this crime is a crime upon which he may extradited.

6.     The required documents and evidence in support of extradition have been presented in accordance with the laws of the United States of America and the applicable Treaty and the Court finds the documents and evidence have been duly authenticated by the United States of America.

7.     The Court accordingly finds Defendant's extradition is authorized under the Treaty for execution of a sentence for an extraditable offense. Defendant's extradition to Bosnia is therefore certified for the purpose of completing the sentence imposed for his criminal conviction in Bosnia.

CERTIFICATION OF EXTRADITION - 23

**CONCLUSION**

For the reasons above, the Court **ORDERS**:

1.      The Court hereby **CERTIFIES** the above findings as well as the evidence, documents, pleadings and transcripts of the extradition hearing held in this case to the Secretary of State pursuant to 18 U.S.C. § 3184 and issues this order certifying the extradition of Defendant Nedzad Kahrimanovic to Bosnia.

2.      Under 18 U.S.C. § 3184, upon certification of extradition, Defendant is required to surrender pursuant to the terms of the Treaty herein.

3.      The Court issued an order releasing Defendant, Nedzad Kahrimanovic, subject to supervision by the United States Probation and Pretrial Department.

4.      If the US seeks revocation of Defendant's release order, it should file a motion and a hearing will be set to address whether Defendant should be committed to the custody of the United States Marshal pursuant to 18 U.S.C. § 3184 and taken into custody or whether Defendant should remain in the community pursuant to the Court's release order until he is surrendered to Bosnia, or until further order of the Secretary of State.

5.      If Defendant remains in the community pursuant to any release order, the parties shall confer regarding on an appropriate surrender date and advise the Court.

6.      If Defendant wishes to challenge this order certifying extradition, a writ of habeas corpus is his only avenue for relief. *See Vo v. Benov*, 447 F.3d at 1240. Any writ for petition of habeas corpus must be filed no later than **May 15, 2025**. Any request for an order staying extradition pending determination of a writ for habeas corpus shall be filed with the habeas writ, if such a writ is filed. Pending determination of whether a stay shall be granted, Defendant shall not be extradited to Bosnia and shall remain in this District in the United States of America.

6.      If Defendant does not file a writ for petition for habeas corpus challenging the Court's extradition certification order by **May 15, 2025,** the parties shall immediately confer on an appropriate surrender date.

7.      The Clerk of the Court shall deliver a certified copy of this Certification of Extradition to the Assistant United States Attorney assigned to this action for transmission to the Secretary of State.

8.      The Clerk shall also provide copies of this order to the parties.

DATED this 30th day of April, 2025.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

CERTIFICATION OF EXTRADITION - 25